UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL JAMES HOLMAN,

        Petitioner,                      Case Number: 05-CV-70359

v.                                          HON. DENISE PAGE HOOD

PAUL H. RENICO,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS

**I.    Introduction**

Petitioner Michael James Holman, a state inmate currently incarcerated at the Carson City Correctional Facility in Carson City, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his convictions for armed robbery, being a felon in possession of a firearm, and possession of a firearm during the commission of a felony. Respondent has filed an Answer in opposition to the petition. For the reasons set forth below, the Court denies the petition.

**II.    Factual Background**

The Michigan Court of Appeals set forth the facts leading to Petitioner's convictions as follows:

> Richard and Kathy DeHaan are siblings who worked at a business known as Boston Square Lock and Key. Kathy DeHaan testified that shortly after lunch on January 11, 2000, defendant entered the store, pointed a gun at her, and demanded that she give him the money from the cash register. When defendant asked for more money, Richard DeHaan came out of the back room with his own gun and told

defendant to "hold it." Richard DeHaan testified that defendant ran out of the store but then pointed the gun at them through the front store window. At this point, Richard DeHaan fired his weapon at defendant and began chasing him down the street. Richard DeHaan testified that defendant escaped in a light blue Dodge Dynasty. He claimed that he heard defendant discharge his weapon during the chase.

Kathy DeHaan telephoned the police when her brother ran after defendant. The police discovered a vehicle matching the description given by Richard DeHaan in an alley near defendant's home. While setting a perimeter around the vehicle, Officer Phillip Werkema noticed defendant walking away from the area. He testified that defendant matched the height and weight of the description given of the suspect. When Officer Werkema attempted to approach defendant, he claimed that defendant evaded him by quickly walking between houses. After hearing Officer Werkema's description of defendant over the radio, Officer Kristen Rogers observed defendant come out from between two homes and asked him to stop. She testified that she explained to defendant that he matched the description of a suspected robber in the area and that she was going to detain him. Officer Rogers then placed defendant in handcuffs. She observed that defendant appeared out of breath and nervous but did not discover any weapons on his person. Defendant was not wearing the same clothes that had been described by the DeHaans. The police ultimately sought medical attention for defendant when they discovered he was bleeding from a bullet wound in his shoulder.

Kathy and Richard DeHaan were brought separately to the area where defendant was being detained for a show-up. Only Richard DeHaan was able to identify defendant as the robber at that time. Kathy DeHaan identified defendant as the robber when she testified at trial. She stated that she was now positive of her identification because she heard him speak at the preliminary hearing.

Defendant's mother testified that on the day of the robbery defendant came home shortly after lunch, changed his clothes, and left again. Defendant denied any involvement with the robbery. When questioned by the police at the hospital, defendant claimed that he was shot at a local party store. At trial, however, defendant claimed that his brother shot him accidentally at their home. He testified that he was walking to a friend's house to get a ride to the hospital when he was arrested. Defendant alleged that he lied to the police because he was trying to protect his brother. The prosecution then confronted

> defendant with a letter, addressed to defendant's brother, that was confiscated from defendant in jail. At the bottom of the letter, defendant wrote: "Study. Keep reading it over. If necessary, add your own details, but it should be straight." Defendant testified that he wrote this letter so that his brother would not commit perjury.

People v. Holman, slip op. at 1-2.

### III.     Procedural History

Following a jury trial in Kent County Circuit Court, Petitioner was convicted of armed robbery, Mich. Comp. Laws § 750.529, possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b, and felon in possession of a firearm, Mich. Comp. Laws § 750.224f. On April 30, 2001, Petitioner was sentenced as a third habitual offender to eighteen to fifty years imprisonment for the armed robbery conviction, two to ten years imprisonment for the felon in possession conviction, and two years imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

I.     The prosecutor's actions denied the defendant a fair trial and his due process rights.

II.    The defendant's convictions must be reversed because the court failed to properly instruct the jury thus denying the defendant his due process rights to a fair trial under the Constitutions of the State of Michigan and the United States.

III.   There was insufficient evidence to allow submitting the assault with a dangerous weapon charge to the jury. Therefore, the judge was in error in not granting the defense motion for directed verdict and a new trial must result.

IV.    The defendant's sentences were disproportionate, were based on an improper guideline scoring and, therefore, must be reversed.

V.     The legislatively imposed mandate that the Court of Appeals must affirm sentences which are imposed within the guidelines (M.C.L. 769.34(10)) is unconstitutional.

VI.    The defendant's convictions must be reversed because the statements which were a major part of the prosecution's proofs were the fruit of the poisonous tree resulting

>   from an illegal arrest, as was the identification of defendant and resulting evidence for the search warrant.
>
> VII.   The defendant is entitled to a new trial because of ineffective assistance of trial counsel if any errors raised in this appeal are not considered because of a failure to object or make a record in the trial court.

The Michigan Court of Appeals affirmed Petitioner's convictions, but remanded to trial court to correct an error in the judgment of sentence. At sentencing, the trial court judge indicated the sentences for armed robbery and felon in possession should be served concurrently, but the judgment of sentence incorrectly reflected these sentences should be served consecutively. People v. Holman, No. 236868 (Mich. Ct. App. Sept. 16, 2003).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, presenting the same claims presented to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. People v. Holman, No. 124924 (Mich. March 30, 2004).

Petitioner then filed the pending petition for a writ of habeas corpus raising the same claims raised before the Michigan appellate courts.

**IV.   Analysis**

   **A.   Standard of Review**

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

>   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>   (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

>   (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law.  Franklin v. Francis, 144 F.3d 429 (6th Cir. 1998).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1)[1]; *see also* Cremeans v. Chapleau, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

Williams v. Taylor, 120 S. Ct. 1495, 1519-20 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this

---

[1] 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

Court to the facts of a prisoner's case." Id. at 1521.  The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.

Id. at 1521-22.

### B. Procedural Default

Respondent argues that Petitioner's first, second, and sixth claims are procedurally defaulted. The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750 (1991).  Such a default may occur if the state prisoner files an untimely appeal, Coleman, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict.  United States v. Frady, 456 U.S. 152, 167-69 (1982); Simpson v. Sparkman, 94 F.3d 199, 202 (6th Cir. 1996).  Application of the cause and prejudice test may be excused if a

petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." Rust, 17 F.3d at 162; Murray v. Carrier, 477 U.S. 478, 496 (1986).

This Court begins its analysis of whether Petitioner's claims are procedurally defaulted by looking to the last reasoned state court judgment denying Petitioner's claims. *See* Coleman, 501 U.S. at 729-30. The Michigan Court of Appeals held that Petitioner's prosecutorial misconduct, jury instruction, and Fourth Amendment claims were not preserved for appellate review. Accordingly, the state court's judgment clearly rested on a procedural bar and the doctrine of procedural default is invoked.

Therefore, this Court may not review Petitioner's claims unless he has established cause for the default and actual prejudice as a result of the alleged violation of federal law or he has demonstrated that failure to consider these claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750.

In the instant case, Petitioner claims that his trial attorney's ineffectiveness constitutes "cause." The Supreme Court has held that "cause" under the cause and prejudice standard must be "something external to the petitioner, something that cannot fairly be attributable to him." Id., at 753. The Court further held that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error. . . . Attorney error that constitutes ineffective assistance of counsel is cause, however." Id. at 753-54 (internal citations omitted).

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of

7

counsel. First, a petitioner must prove that counsel's performance was deficient. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." Id.

The Supreme Court emphasized that, when considering an ineffective assistance of counsel claim, the reviewing court must be "highly deferential" when considering counsel's performance. Id. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal citations omitted).

The Court will consider each of Petitioner's defaulted claims in turn to determine whether counsel was ineffective for failing to preserve them for appellate review.

### 1. Prosecutorial Misconduct Claim

First, Petitioner claims that his trial attorney was ineffective in failing to object to alleged instances of prosecutorial misconduct. Specifically, Petitioner argues that the prosecutor committed misconduct by introducing evidence that he initially gave false identifying information to police and evidence that the vehicle found in an alley following the robbery matched the description of a stolen vehicle. Although finding these claims were not preserved for appellate review, the Michigan Court of Appeals nevertheless considered their merits and found no prosecutorial misconduct. The Michigan Court of Appeals held that, under Michigan law, Petitioner's false statements to the police regarding his name and other identifying information was relevant to show consciousness of guilt.

The state court further held that the testimony regarding the stolen vehicle was elicited from police Officer Carole Stahl to explain her involvement in the case because the armed robbery occurred outside her normal patrol area. She explained that she became involved because the abandoned vehicle's description matched that of a stolen vehicle which she was investigating.

Petitioner has not shown that the state court's decision that this testimony was properly elicited by the prosecutor was contrary to or an unreasonable application of Supreme Court precedent. He, therefore, cannot establish that his attorney was ineffective for failing to object to properly admitted testimony.

### 2. Jury Instruction Claim

Petitioner next claims that the trial court violated his right to a properly instructed jury. First, Petitioner claims the trial court erred in its reasonable doubt instruction when it instructed the jury that a reasonable doubt meant that the jury had to be "firmly convinced" that the defendant was guilty and that there was no "realistic possibility" that he was innocent. Second, Petitioner claims that the trial court improperly instructed the jury that they could consider a witness's background in assessing his or her credibility.

The Michigan Court of Appeals again, although finding the jury instruction claims were not preserved for appellate review, addressed the merits of these claims and held that the instructions were proper. The state court held that the reasonable doubt instruction adequately conveyed to the jury the burden of proof required to find Petitioner guilty of the charged crimes.

The Supreme Court has approved use of a reasonable doubt instruction similar to that given in Petitioner's case, utilizing the "firmly convinced" language. Victor v. Nebraska, 511 U.S. 1, 26-27 (1994) (Ginsburg, J., concurring). *Accord* Coleman v. Mitchell, 268 F.3d 417, 437 (6th Cir.

9

2001); Robinson v. Jones, 2005 WL 1214251 (W.D. Mich. May 20, 2005). Where the Supreme Court has cited with approval a similar instruction, Petitioner has failed to show that the state court's decision that the instruction was proper was contrary to or an unreasonable application of Supreme Court precedent. Consequently, Petitioner's attorney was not ineffective in failing to object to this proper instruction.

Petitioner also argues that the trial court erred in encouraging jurors to consider witnesses' backgrounds in assessing their credibility. Petitioner argues that this invited jurors to give more weight to police officers' testimony. The trial court instructed the jury, in pertinent part:

> We had some witnesses here who were police officers. You need to know that a police officer isn't entitled to any extra credibility by virtue of the uniform, the badge and the title. But neither is a police officer's credibility to be automatically diminished in your eyes because he or she is a police officer.
>
> I'm not telling you to ignore the fact that a witness is a police officer. I'm not telling you to ignore every – any witness' background. Background can often help you understand where the person is coming from, what they mean, why they said what they did, why they saw what they did, whatever.
>
> So, background is important, but you don't by virtue of a person's background, be it a police officer or something else, treat the person as automatically more credible or automatically less credible. Background is a consideration, but all witnesses are to be treated the same. And if you give a person's background due weight, you're treating everyone the same.
>
> I mean, we all have different backgrounds, but treating our backgrounds as relevant is then treating us all the same.

Holman, slip op. at 4.

The Michigan Court of Appeals held that this instruction advised the jurors to consider each

witness equally and not to accord police officers special credibility based upon their occupations. Further, the Michigan Court of Appeals held that the trial court did not invite the jury to consider a person's economic or social status. Id. Petitioner's attorney, therefore, was not ineffective in failing to object to proper instructions.

### 3. Fourth Amendment Claim

Finally, Petitioner claims that his attorney was ineffective in failing to object to his illegal arrest and move for suppression of his statements to police on this basis. The Michigan Court of Appeals held that the statements were admissible to impeach Petitioner's trial testimony regarding the nature of his wounds. Petitioner has failed to show that the state court's conclusion in this regard was contrary to or an unreasonable application of Supreme Court precedent. Therefore, Petitioner cannot establish his attorney was ineffective in failing to object to the admission of these statements.

### 4. Miscarriage of Justice Exception to Procedural Default

The Court has concluded that trial counsel was not ineffective in failing to object to the foregoing alleged trial errors. Because Petitioner has failed to establish that his trial attorney rendered ineffective assistance of counsel, he has failed to show cause for his procedural default. His claims are therefore barred unless he can establish that a constitutional error resulted in a fundamental miscarriage of justice. Schlup v. Delo, 513 U.S. 298 (1995).

The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. Schlup, 513 U.S. at 321. Thus, Petitioner must assert a constitutional error along with a claim of innocence. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it

be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." Id. This evidence "must show that it is more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt." Id. at 327. Petitioner fails to present new, reliable evidence in light of which no reasonable juror would have found him guilty. Therefore, Petitioner's first, second, and sixth claims are barred from consideration by procedural default.

### C. Submission of Assault with a Dangerous Weapon Charge to Jury

Petitioner claims that the trial court erred in denying his motion for a directed verdict on the assault with a dangerous weapon charge. Petitioner argues that there was insufficient evidence to support the charge. Petitioner was acquitted of this charge.

Some courts have held that submission to the jury of a charge not supported by sufficient evidence is harmless error where the defendant is acquitted of that charge. *See* Howard v. United States*,* 389 F.2d 287, 292 (D.C. Cir. 1967); United States v. Alexander, 471 F.2d 923, 966 (D.C. Cir. 1972). The Sixth Circuit Court of Appeals, however, has yet to directly address this question. *See* Daniels v. Burke, 83 F.3d 760, 765 n.4 (6th Cir. 1996). In Daniels, the petitioner argued that his right to due process was violated when the trial court allowed a first-degree murder charge to be submitted to the jury. The petitioner argued that there was no justification for submission of that charge, and, even though he was acquitted of first-degree murder, he suffered prejudice because the conviction for second-degree murder may have been a compromise verdict. Id. at 765. The Sixth Circuit Court of Appeals held that it need not address whether to apply the harmless error rule based upon the petitioner's acquittal of that charge because sufficient evidence from which to conclude that the petitioner was guilty of first-degree murder was presented, and, the petitioner's due process

claim, therefore, was meritless  Id.

Under Michigan law, the elements of assault with a dangerous weapon are an assault, with a dangerous weapon, and with the intent to injure or place the victim in reasonable fear or apprehension of an immediate battery.  People v. Lawton, 196 Mich. App. 341 (Mich. Ct. App. 1992).  Richard DeHaan testified that he worked for Boston Square Lock and Key Company in Grand Rapids, and that, on January 11, 2000, he was sitting in his office when he saw Petitioner point a gun at his sister, Rebecca DeHaan.  Mr. DeHaan retrieved his own handgun and ordered Petitioner to "hold it."  Petitioner fled the business, looked back into the business, and pointed the gun at Mr. DeHaan and his sister through the front window.  Mr. DeHaan followed Petitioner out of the store and began chasing him down the street.  Mr. DeHaan heard a gunshot, and then fired his own weapon.

The Court finds that, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to justify the submission of the assault with a dangerous weapon charge to the jury.  *See* Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Therefore, allowing the jury to consider this charge was not a violation of Petitioner's constitutional rights.

**D.     Proportionality of Sentence**

Next, Petitioner claims that his sentences were disproportionate and that the trial court incorrectly scored offense variable 19 (OV19).

"'[F]ederal habeas corpus relief does not lie for errors of state law.'" Estelle, 502 U.S. at 67 (*quoting* Lewis, 497 U.S. at 780).  Petitioner's argument that the state court erred in scoring his Offense Variable is based solely on state law.  Consequently, this claim is not cognizable on federal habeas corpus review.  *See, e.g.,* Thomas v. Foltz, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987)

13

(holding that where petitioner seeks relief on the basis of a trial court's application of state sentencing guidelines, petitioner's claim is not cognizable on habeas review); Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (holding that "federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures").

Petitioner claims that his sentence for armed robbery was disproportionate to the crime committed. There exists no constitutional right to strict proportionality in sentencing. Harmelin v. Michigan, 501 U.S. 957 (1997). However, the Eighth Amendment prohibits "extreme sentences that are grossly disproportionate to the crime." Id. at 995. The Sixth Circuit has held that "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment'." United States v. Organek, 65 F.3d 60, 62-63 (6th Cir. 1995); *see also* United States v. Williams, 15 F.3d 1356, 1364 (6th Cir. 1994) (holding that, generally, a sentence within statutory limitations does not violate the Eighth Amendment); Hutto v. Davis, 454 U.S. 370, 374 (1982) (holding that "federal courts should be reluctant to review legislatively mandated terms of imprisonment and . . . successful challenges to the proportionality of particular sentences should be exceedingly rare") (internal quotations omitted).

Under Michigan law, the maximum sentence for armed robbery, third habitual offender is life imprisonment. *See* Mich. Comp. Laws § 750.529. Therefore, Petitioner was sentenced within the statutory maximum. Accordingly, given the nature of the offense and the fact that Petitioner was sentenced within the state sentencing guidelines, this Court finds that Petitioner's sentence does not offend the Eighth Amendment and he is therefore not entitled to habeas corpus relief with respect to this claim.

### E.     Constitutionality of Mich. Comp. Laws § 769.34(10)

Finally, Petitioner contends that Mich. Comp. Laws § 769.34(10) is unconstitutional because it violates a defendant's right to appeal.

The relevant statutory provision provides, in pertinent part:

> If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence. A party shall not raise on appeal an issue challenging the scoring of the sentencing guidelines or challenging the accuracy of information relied upon in determining a sentence that is within the appropriate guidelines sentence range unless the party has raised the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals.

Mich. Comp. Laws § 769.34(10).

The Supreme Court has cited with approval the proposition that "[o]rdinarily, a sentence within statutory limits is beyond appellate review." Zant v. Stevens, 462 U.S. 862, 901 (1983). Thus, Michigan's codification of this rule is not contrary to or an unreasonable application of Supreme Court precedent.

**V.     Conclusion**

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

          /s/ Denise Page Hood
          DENISE PAGE HOOD
          UNITED STATES DISTRICT JUDGE

DATE: October 31, 2006


     I hereby certify that a copy of the foregoing document was served upon counsel of record on October 31, 2006, by electronic and/or ordinary mail.

          S/William F. Lewis
          Case Manager